IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:   CONRAD LEE FITZWATER

                Debtor,

CONRAD LEE FITZWATER,

                Appellant,

v.                                  CIVIL ACTION NO.  2:11-cv-00934

BETTY L. WILLIS, et al.,

                Appellee.

**MEMORANDUM OPINION**

Pending before the court is Conrad Fitzwater's appeal from a decision in an Adversary Proceeding in the United States Bankruptcy Court for the Southern District of West Virginia [Docket 1]. The bankruptcy court found that Fitzwater's debts to Betty Willis and Carolyn Callopi were not dischargeable because Fitzwater violated securities laws and committed fraud while acting in a fiduciary capacity. For the reasons stated below, the decision of the bankruptcy court is **AFFIRMED** and Fitzwater's appeal is **DISMISSED**.

**I.      Procedural History**

In February 2010, Betty Willis and Carolyn Callopi ("appellees") filed a suit against Conrad Fitzwater ("appellant") in the Circuit Court of Kanawha County, alleging negligent

1

9

misrepresentation, negligent or reckless conduct, unjust enrichment, fraud and concealment, breach of contract, breach of fiduciary duty, and violation of the West Virginia Securities Act. *See* Willis, et al. v. Fitzwater (*In re* Fitzwater), Ch. 7 Case No. 10-20331, Adv. No. 10-2019 [Docket 1-1] at 1-2 (S.D. W. Va. Aug. 29, 2011) (hereafter "Adversary Proceeding"). Willis and Callopi alleged that they lost significant amounts of money by investing in six securities due to the misleading advice of Fitzwater, who was not authorized to sell securities in West Virginia at the time. *See id.*

The next month, the Circuit Court suit was stayed when Fitzwater filed for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Southern District of West Virginia ("the bankruptcy court"). Among the liabilities that Fitzwater sought to discharge were the potential debts he would owe the appellees as a result of their claims against him. The appellees filed this Adversary Proceeding as creditors in the bankruptcy court, seeking the denial of the discharge of the debts owed to them by Fitzwater. *See id.* Specifically, the appellees' "[c]omplaint sought denial of General Discharge under 11 U.S.C. [§] 727, Denial of Discharge of Particular Debt due to Violation of State and Federal Securities Laws and Regulations under 11 U.S.C. [§] 523(a)(19) and Denial of Particular Debt Due to Fraud under 11 U.S.C. [§] 523(a)(2) and 11 U.S.C. [§] 523(a)(4)." *Id.* at 2-3.

Following briefing and a trial, the bankruptcy court released its Findings of Fact and Conclusions of Law for the Adversary Proceeding, which "specifically denied discharge of [Fitzwater's] liabilities to [] Betty L. Willis and Carolyn Callopi pursuant to 11 U.S.C. [§§] 523(a)(19) and 523(a)(4) . . . ." *Id.* at 9. In other words, the bankruptcy court, finding violations of securities laws and fraud in a fiduciary capacity, ruled that Fitzwater's debts were not

2

dischargeable. The bankruptcy court also entered judgment in favor of Willis and Callopi in the amounts they lost investing with Fitzwater: $568,174 and $50,000, respectively, plus interest, costs and fees.[1] *See id.* at 6-10.

On November 22, 2011, Fitzwater appealed the bankruptcy court's decision to this court pursuant to 28 U.S.C. § 158. The issues have been fully briefed and are now ripe for review.

## 2. Issues on Appeal

The appellant argues that the bankruptcy court erred in denying the discharge of his debts pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(19), and erred in entering judgment for the appellees. To support his position, the appellant claims that the bankruptcy court erred in finding that he violated securities laws and committed fraud in a fiduciary capacity. (Appellant's Br. [Docket 4] at 2-5). Specifically, the appellant contends that the bankruptcy court was not justified in making its findings of fact and concluding that the appellant "knew or should have known that he was offering and selling securities and he did not fulfill any of the requirements imposed by the securities laws . . . ."[2] *See* Adversary Proceeding at 9.

Because the appellant does not meet the required burden for setting aside the findings of fact of a bankruptcy court, the conclusions of that court are **AFFIRMED**, and the appeal is **DISMISSED**.

## 3. Analysis

---

[1]  The judgments awarded to the appellees reflect the amount lost on their investments. Betty Willis invested $600,000 in five separate securities and received income of $31,826 on those investments, leaving her with a loss of $568,174. Carolyn Callopi invested $50,000 in a single security, and received no income. *See* Adversary Proceeding at 6.

[2]  The appellant's appeal brief begins on a different note, claiming that his due process was violated because he "was not provided the opportunity to question . . . Carolyn Callopi or Betty Willis under oath," but the appellant later dropped that argument when he discovered it was without merit. (*See* Appellant's Br. [Docket 4] at 1; Br. in Resp. to Notice of Bankruptcy Appeal [Docket 5] at 1-2; Appellant's Resp. / Reply Br. [Docket 6] at 1).

*Standard of Review*

When a bankruptcy court makes a ruling on an adversary proceeding, "the court must find the facts specially and state its conclusions of law separately." FED. R. CIV. P. 52(a)(1); *See* FED. R. BANKR. P. 7052 ("Rule 52 F.R.Civ.P. applies in adversary proceedings . . . ."). When the ruling is appealed to the district court, the bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." FED. R. BANKR. P. 8013. The purpose of the "clearly erroneous" standard is to "accord[] the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52 F.R.Civ.P.," which uses the same language to set the standard for appellate courts in setting aside findings of a district court ruling without a jury. FED. R. BANKR. P. 8013 advisory committee's note.

The Supreme Court of the United States has held that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). This court will therefore use that standard in reviewing the findings of fact of the bankruptcy court.

*Violations of Securities Laws*

A debt is not dischargeable in bankruptcy if it "is for the violation of any of the Federal securities laws . . . [or] any of the State securities laws." 11 U.S.C. § 523(a)(19)(A)(i) (2006). Two conditions must be met for this statute to render debt not dischargeable:

> (1) The debt is for the violation of certain federal securities laws, state securities laws or regulations under the federal or state securities laws or is for "common law

4

> fraud, deceit, or manipulation in connection with the purchase or sale of any security"; and
>
> (2) The debt results from a judgment, order, consent order or decree in an [sic] federal or state judicial or administrative proceeding or any settlement agreement entered by the debtor or any court or administrative order for the payment of damages, a fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee cost or other payment owed by the debtor.

15 LAWRENCE P. KING, COLLIER ON BANKRUPTCY § 523.24B (15th ed. 2006).

The bankruptcy court ultimately concluded that "[t]he activities of [Fitzwater] aforesaid, were in violation of the Securities Laws of the State of West Virginia." Adversary Proceeding at 8. As a result, the bankruptcy court denied discharge pursuant to 11 U.S.C. § 523(a)(19) and entered judgment in favor of the appellees. *See id.* at 9. Therefore, if the bankruptcy court's findings are upheld, both conditions are met for the denial of discharge due to securities violations—the bankruptcy court found the violation of specific state securities laws regarding all six sales of securities, and the debts Fitzwater owes the appellees result from the entry of judgment by the bankruptcy court against him. If the findings of fact that led to the conclusion that Fitzwater violated securities laws with all six sales are not clearly erroneous, then this court cannot disturb the bankruptcy court's rulings as to those debts.

### *Securities #1-4*

West Virginia's Uniform Securities Act makes it "unlawful for any person to transact business in this state as an investment adviser unless . . . [h]e or she is so registered under this chapter." W. VA. CODE § 32-2-201 (2011). The bankruptcy court found that Fitzwater "provided investment advisor services to Betty L. Willis and Carolyn Callopi," and "was registered to sell securities in the State of West Virginia . . . during the periods of March 1998–October 2002; March 2004–August 2005 and June 2007–2008." Adversary Proceeding at 3, 7.

Further, the court found that "[a]s a result of the recommendation of [] Fitzwater," Betty Willis purchased securities through Fitzwater during periods of time when Fitzwater was not registered to sell securities. *Id.* at 4-5.

Overall, Fitzwater sold a total of six securities to the appellees. Securities #1-4, sold to Willis, were each $100,000 investments in Monarch Visual Solutions, Inc. Securities #1-2 were sold on September 18, 2006, and securities #3-4 were sold on January 3, 2007. Fitzwater was not licensed to sell securities at the time of the sale of securities #1-4. Security #5, sold to Willis on July 9, 2007, was a $200,000 investment in A & O Life Fund, LLC. According to the bankruptcy court's findings, Fitzwater was licensed to sell this security at the time. No date is given for the sale of security #6 to Carolyn Callopi, a $50,000 investment in Monarch Visual Solutions, Inc.

Therefore, for the debts related to securities #1-4, the facts, if not clearly erroneous, support the conclusion that Fitzwater violated a state securities law and that discharge of his debts should be denied. *See Frost v. Ceviello*, 348 B.R. 459 (Bankr. N.D. Ohio 2006) (granting summary judgment to creditor in an adversary proceeding pursuant to 11 U.S.C. § 523(a)(19) where the debtor sold securities when he was not registered to do so, which violates an Ohio securities law).

### *Securities #1-6*

Although the record reflects that Fitzwater was unregistered only at the time of the sale of securities #1-4, the bankruptcy court's other findings support the conclusion that all six sales of securities were in violation of the laws of West Virginia. The state's Uniform Securities Act makes it "unlawful for any person, in connection with the offer, sale or purchase of security, directly or indirectly . . . (2) [t]o make any untrue statement of a material fact or omit to state a material fact

6

necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . ." W. VA. CODE § 32-1-101 (2011).

The bankruptcy court found that "Fitzwater stated that the investments in question were good investments, were safe, money-makers, that he had or was investing in the investments himself . . . ." Adversary Proceeding at 4. Further, the court found that the appellees "are widows who invested upon the advice and recommendations" of Fitzwater, and who "relied upon and trusted" Fitzwater when investing their retirement funds with him. *Id.* at 3-4. Contrary to Fitzwater's assurances, however, "problems developed with Securities [#1-6]," namely that Monarch Visual Solutions, Inc. had filed for bankruptcy. *Id.* at 6. In response to these concerns, Fitzwater told the appellees that "these were still good investments and told Betty Willis that he had been to Monarch, was personally aware of their recovery plan, that the Securities were viable investments and thus that Betty and Carolyn had nothing to worry about." *Id.* According to the bankruptcy court, the problems continued despite Fitzwater's promises because the securities "were not appropriate investments for Ms. Willis and Ms. Callopi and . . . were illiquid with no ready market, were speculative in nature and the concentration in these securities was risky, inappropriate and their risks were not disclosed to Ms. Willis or Ms. Callopi." *Id.* at 8-9.

Therefore, for all securities #1-6, the facts, if not clearly erroneous, support the conclusion that Fitzwater violated a state securities law by making an untrue statement or omitting the material facts necessary to make his statements not misleading. *See* W. VA. CODE § 32-1-101 (2011). The bankruptcy court would be justified in deeming it "untrue" to tell trusting widows that the investments were safe money-makers when one company filed for bankruptcy and all six securities failed to pay appropriate income.

7

### *Finding that All Securities Violated State Law Not Clearly Erroneous*

Having determined that the bankruptcy court's findings of fact would support its legal conclusion that Fitzwater violated state securities laws, the task is now to determine whether those findings of fact must be affirmed. As discussed above, the findings of fact of a bankruptcy court must stand unless they are "clearly erroneous." FED. R. BANKR. P. 8013.

Before issuing its findings in the Adversary Proceeding, the bankruptcy court read the briefs of the parties and held a trial. The conclusions of law were made after the bankruptcy court had the opportunity to judge the credibility of the parties and other witnesses testifying at trial. Because the factual basis for the findings is supported by the parties' briefs, and because "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses," this court cannot say that the findings are clearly erroneous. FED. R. BANKR. P. 8013. Although appellant's appeal briefs argue that the findings of fact are untrue, the bankruptcy court stands on a solid foundation in making its findings, and this court is far from being "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). This court cannot set aside the bankruptcy court's findings, which logically support the conclusion that Fitzwater violated state securities laws, and therefore cannot discharge those related debts.

### *Fraud in a Fiduciary Capacity*

The affirmation of the bankruptcy court's conclusions regarding securities laws violations is an independent ground that, by itself, justifies denial of discharge and dismissal of Fitzwater's appeal. *See* 11 U.S.C. § 523(a) (listing nineteen independent grounds, any one of which renders a debt not dischargeable). Therefore, this court has no need to review the record on the subject of

fraud, and **FINDS** that the bankruptcy court properly concluded that the appellant violated state securities laws, and therefore properly denied discharge of his debts and entered judgment for the appellees.

The Court **AFFIRMS** the decision of the bankruptcy court that judgment be entered in favor of the appellees Betty Willis and Carolyn Callopi, and **ORDERS** that this appeal be dismissed and removed from the court docket. The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion to counsel of record and any unrepresented party.

ENTER:    September 21, 2012

Joseph R. Goodwin, Chief Judge

9